## IN THE COURT OF APPEALS OF IOWA

No. 16-1758
Filed January 10, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**KOHL M. FISHER,**
        Defendant-Appellant.
_____


Appeal from the Iowa District Court for Boone County, Timothy J. Finn, Judge.


A defendant appeals the district court's denial of his motion to suppress evidence discovered during the search of his vehicle. **AFFIRMED.**


Jesse A. Macro Jr. of Macro & Kozlowski, LLP, West Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee.


Heard by Vogel, P.J., and Tabor and Bower, JJ.

**VOGEL, Presiding Judge.**

Following a jury trial, Kohl Fisher appeals his conviction for conspiracy to manufacture, deliver, or possess with intent to deliver methamphetamine and possession with intent to deliver, in violation of Iowa Code sections 124.401(1)(c)(6) and 124.413 (2016). On appeal, he asserts the district court should have granted his motion to suppress evidence because the search of his vehicle was conducted at the request of his parole officer and violated his constitutional rights. Because we conclude the search was legally conducted under the automobile exception to the warrant requirement, we affirm the district court's denial of Fisher's motion to suppress and affirm his conviction and sentence.

## I. Background Facts and Proceedings.

When he was released from prison in February 2016, Fisher signed a standard parole agreement that provided, in part: "I will submit my person, property, place of residence, vehicle, and personal effects to search at any time, with or without a search warrant, warrant of arrest, or reasonable cause by my parole officer or law enforcement officer." Probation Officer Steve Naeve was assigned to supervise Fisher's parole in April 2016. As part of his parole, Fisher was required to wear a GPS monitoring bracelet. Officer Naeve received notification from Boone police on April 24 that Fisher was potentially suicidal. Officer Naeve met with Fisher that day, and Fisher admitted to having recently used methamphetamine.

In the following weeks, Officer Naeve consulted with Boone Police Investigator Cory Rose. Investigator Rose and Officer Naeve had been told by a

trusted confidential informant that Fisher and Fisher's wife were distributing methamphetamine in Boone and were getting supplies of methamphetamine from an individual in Jefferson. Officer Naeve monitored Fisher's movements through the GPS bracelet and noted he was frequenting at least two locations in Boone that Officer Naeve would describe as "drug houses"—Officer Naeve was familiar with people that frequented the locations and knew those individuals were currently using controlled substances. Fisher was also noted to frequent locations in nearby Jefferson, which local Greene County law enforcement informed Officer Naeve were locations where methamphetamine was being dealt.

On May 9, 2016, Investigator Rose contacted Officer Naeve to inform him that Investigator Rose, while off duty, observed Fisher driving towards Jefferson. Fisher's vehicle stopped at a residence in Jefferson where Fisher had frequented in the weeks leading up to May 9. Investigator Rose observed Fisher and Fisher's wife leave the residence after a short amount of time, "maybe about a half hour." Fisher then opened the hood to his car, reached underneath the hood, pulled something out of his pocket, placed it under the hood, closed the hood, walked around the car inspecting it, and then got into the car and drove away, heading back towards Boone.

Investigator Rose followed Fisher, and Officer Naeve monitored Fisher's bracelet as Fisher traveled from Jefferson back towards Boone. Officer Naeve advised Boone patrol officers that if they encountered Fisher, Officer Naeve wanted to speak with him. Boone Police Officer Josh Olsen heard Officer Naeve's advisement that Fisher was headed to Boone and that his vehicle likely contained drugs. Officer Olsen observed Fisher speeding and pulled him over. Officer Olsen

contacted Officer Naeve, notifying him that Fisher had been stopped, and Officer Naeve quickly arrived at the scene as he was only one block away when he was contacted by Officer Olsen. After issuing him a warning for speeding, Officer Olsen advised Fisher that Officer Naeve was present and wanted to speak with him, and he told Fisher he was not free to go.

Officer Naeve asked Fisher what was in the car—inferring knowledge of the presence of drugs—and Fisher denied anything was present. Officer Naeve asked to search Fisher's car, and Fisher responded that he knew he needed to consent for his parole. Officer Naeve did not tell Fisher he had the right to refuse the search. Investigator Rose, who had also arrived on scene, conducted the search and quickly located a magnetic hide-a-key box in the hood compartment of Fisher's car, in the same location Investigator Rose had seen Fisher reach when Fisher was at the house in Jefferson. Inside the box were two small baggies containing what would later be determined to be methamphetamine.

Fisher denied knowledge of the methamphetamine and his wife, who was a passenger in the car, claimed ownership of it. A search of Fisher's wife's purse revealed other evidence of drug distribution, including three cell phones and a notebook with names and figures consistent with controlled substance transactions.

Fisher was arrested and charged for conspiracy and possession of the methamphetamine. He filed a motion to suppress that sought, in part, to suppress the evidence obtained from the search of his vehicle. The State resisted the motion, asserting the search was valid under the automobile exception to the warrant requirement and valid as a consensual search pursuant to the parole

agreement. After conducting a hearing, the district court denied Fisher's motion to suppress concluding:

> [T]he Court notes that the defendant was paroled from prison and on February 24, 2016, the defendant signed a document entitled "Parole Agreement" which contains the following language, to-wit: "I will submit my person, property, place of residence, vehicle, and personal effects to search at any time, with or without a search warrant, warrant of arrest cause by my parole officer or law enforcement officer."
> That is exactly what happened. The police did not need a search warrant nor did they need even "reasonable cause" if requested by his parole officer. This is exactly what happened.

The case proceeded to a jury trial on August 16, 2016, and the jury returned a guilty verdict on both counts. The court merged the two offenses at sentencing, and Fisher was ordered to serve an indeterminate term of incarceration of no more than ten years with a one-third minimum term. The sentence was ordered to run concurrently with the sentence he was serving on parole. Fisher appeals challenging the court's denial of his motion to suppress the evidence discovered during the search of his vehicle.

**II. Scope and Standard of Review.**

We review de novo constitutional claims of a violation of an individual's rights under the Fourth Amendment of the U.S. Constitution and article I, section 8 of the Iowa Constitution. *State v. Baldon*, 829 N.W.2d 785, 789 (Iowa 2013). "[W]e make an independent evaluation [based on] the totality of the circumstances as shown by the entire record. Each case must be evaluated in light of its unique circumstances." *Id.* (second alteration in original) (citations omitted). "We give deference to the district court's fact findings due to its opportunity to assess the

credibility of witnesses, but we are not bound by those findings." *State v. Brooks*, 888 N.W.2d 406, 410 (Iowa 2016).

## III. Vehicle Search.

While Fisher asserts the search of his vehicle was not justified by the parole agreement or the special needs doctrine, *see id.* at 411–14 (outlining the cases the supreme court has considered involving parolees and the special-needs doctrine), the State argues the search is justified under the automobile exception to the warrant requirement, *see State v. Maxwell*, 743 N.W.2d 185, 192 (Iowa 2008) (noting "[w]e are obliged to affirm an appeal where any proper basis appears for a trial court's ruling, even though it is not one upon which the court based its holding" so long as the parties raised the issue in the district court (citation omitted)).

Warrantless searches are per se unreasonable unless they fall within the carefully drawn exceptions to the warrant requirement. *State v. Gaskins*, 866 N.W.2d 1, 7 (Iowa 2015). Our supreme court has recently reaffirmed the automobile exception to the warrant requirement. *State v. Storm*, 898 N.W.2d 140, 145 (Iowa 2017). "'[T]his exception is applicable when probable cause and exigent circumstances exist at the time the car is stopped by police.' The inherent mobility of motor vehicles satisfies the exigent-circumstances requirement." *Id.* (alteration in original) (quoting *State v. Holderness*, 301 N.W.2d 733, 736 (Iowa 1981)). In addition, there is a "lower expectation of privacy in vehicles compared to homes and other structures." *Id.*

Because the inherent mobility of automobiles satisfies the exigency requirement,[1] we need only address in this case whether the officers had probable cause for the search. "The standard for probable cause is whether a person of reasonable prudence would believe a crime has been committed or that evidence of a crime might be located in the particular area to be searched." *State v. Kern*, 831 N.W.2d 149, 174 (Iowa 2013) (citation omitted). "An anonymous tip, alone, does not ordinarily contain sufficient indicia of reliability to provide reasonable suspicion, let alone probable cause. On the other hand, a significantly corroborated and verified anonymous tip has been held sufficient by the United States Supreme Court under the Fourth Amendment." *Id.* at 175 (citation omitted). In addition, a person's status as a parolee alone does not amount to probable cause. *Id.* at 176. But, "[i]n considering whether probable cause exist[s] in this case, we remember the established principle that 'the knowledge of one peace officer, acting in concert with other peace officers, is presumed to be shared with all.'" *State v. Lovig*, 675 N.W.2d 557, 564 (Iowa 2004) (citation omitted).

In this case, Investigator Rose testified at the suppression hearing he believed Fisher had methamphetamine under the hood of his car on the night in question:

> With all of the information that we received [through] the informant that they were engaged in distributing methamphetamine, the information through his parole officer on going to this residence near the Hy-Vee in Jefferson, that lining up with the informant

---

[1] We also note Fisher's vehicle contained two passengers, who could have driven the car from the scene, furthering the exigency concern in this case. *See Holderness*, 301 N.W.2d at 737 ("The exigency requirement, as explained in prior cases, is satisfied 'when the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained.'" (citations omitted)).

information of that's where they have picked up methamphetamine before.

Seeing Mr. Fisher that night going back and watching him come out of the residence and remove something and place it under the hood of the vehicle, which through the course of investigations, I mean, I've found narcotics hidden on vehicles whether under the hood, under a fender, various places to avoid detection. You know, not a common place for somebody to place something on a vehicle.

Get in the vehicle after conducting a walk around of the vehicle. Like I said, in my thoughts an attempt to make sure everything is operating to not draw attention [of] law enforcement.

That, yes, I believe that there was contraband underneath the hood of that vehicle placed there by Mr. Fisher.

From our de novo review of the evidence, we agree probable cause existed to justify the search. Investigator Rose got a tip from a confidential source he knew to be reliable that Fisher and his wife were distributing methamphetamine in Boone and that they were getting their supply of methamphetamine from Jefferson. In the weeks before the search, Fisher admitted to Officer Naeve that he had used methamphetamine, and Officer Naeve observed Fisher's GPS tracking bracelet showed Fisher was frequenting known drug houses in both Boone and Jefferson. Investigator Rose observed Fisher and his wife driving into Jefferson. He observed Fisher's vehicle parked at a known drug house, and he watched Fisher and his wife walk out of the house after a short time. He then watched as Fisher opened the hood of his car, pulled something from his pocket, and placed it in the engine compartment of his vehicle. Fisher then walked around the car inspecting it, got back into the car, and left town driving towards Boone. We agree with the State that from this evidence "a person of reasonable prudence would believe a crime has been committed or that evidence of a crime might be located in the particular area to be searched." *See Kern*, 831 N.W.2d at 174.

Because our supreme court recently decided to "elect to retain the automobile exception, consistent with our precedent, federal caselaw, and the overwhelming majority of other states," *Storm*, 898 N.W.2d at 142, we affirm the district court's denial of Fisher's motion to suppress based on the automobile exception. We need not address Fisher's claim on appeal that the district court was wrong to conclude the search was valid based on consent from his parole agreement.

**AFFIRMED.**